Okay, our second case is 24-7118, Langford v. Stonebreaker. Mr. Evans? Good morning, may it please the court. My name is Tommy Evans. I am an Assistant Attorney General at the South Carolina Attorney General's Office. I am representing Warren Donnie Stonebreaker for this proceeding. The district court ruled that the South Carolina Supreme Court was not preppy to the information regarding the petitioner causing delay of his trial. We will argue that the district court's interpretation of the record was incorrect. I think that the district court made a mistake and overlooked some findings in the record that will reveal that the Supreme Court did have information, testimony during the trial, that it's a possibility that the petitioner or the appellant responding to this case did actually cause delay in the trial. Therefore, they were not entitled to a speedy trial motion. There was testimony in the trial revealing that the petitioner caused the trial time to be lengthened because of his harassing his co-defendant, Mr. Alvin Phillips, who was essential in the state's being able to prosecute his case. Since there were no identification from the victims or any forensic evidence linking the actual petition to the scene, Alvin Phillips' testimony was essential in this case. It was necessary in order for the state to go forward and to be able to get a conviction on this case. In the appendix on page 758, lines 15 through 21, and page 759, lines 13 through 15, the record revealed that Alvin Phillips did testify that the petitioner forced him to sign his statements, refuting the earlier statements he made to law enforcement. Also, Investigator Young, who was the chief investigator in this case, also testified, and you can find in the appendix on page 865, lines 6 through 9, and 16 through 24, that Mr. Phillips had to be moved to a different facility from concerns of him being an influence. Mr. Evans, can I ask about that? Yes, sir. So what is the sequence of that testimony? Did that occur before the South Carolina Supreme Court ruled on the motion, or was that evidence that came in after the fact? No, that was before the South Carolina Supreme Court got the case. That was actually trial testimony that was part of the record that was provided to the Supreme Court during the appeal, Your Honor. There was also no dispute that this case was essentially called for trial. Now, this case was called for trial two years after his arrest and his indictment, which the court stated was troubling for it to last that long. Well, does the state not also think it's troubling that it took two years to bring this case to trial? No, because it wasn't intentional, Your Honor. They were just trying to get, the victim was Chinese. They couldn't speak English. So the state had to find a certified interpreter. I know that the court said that, but the state never really, I didn't see where the state gave that as a reason for the delay. The state did give, as a reason, appellee's interference in trying to change the witness testimony as multiple reasons. Yes, sir. Yes, ma'am. I think that during the original trial motion that was made for the circuit court judge prior to trial, where the judge ordered that the case be tried within nine months, that was the reason for the delay that the state gave. That's one of the reasons for the delay, getting the interpreter, which took time. Way back at the beginning. Yes, ma'am. Way back at the beginning. So you're saying it took two years to find the interpreter? That's what they're saying. It took two years. Where in the record did the state say that? I mean, I read all about that. I know that the state argued multiple times in multiple ways that the interference with, the attempted interference with the witness was the reason for the delay. I just, and I did see that they had some trouble finding an interpreter, but I didn't see them giving that as a reason for the delay. But you're saying it was somewhere way back in the beginning. In the beginning, and prior to trial, prior to anything happening, that's one of the reasons that the delay was caused by getting the interpreter, which the court found troubling, but the court also found it wasn't done intentionally. They didn't do this in order to delay. They just had trouble because there were no Chinese interpreters in South Carolina. That factual finding is entitled to a presumption of correctness, right, under AEDPA? Yes. And so the burdens on the petitioner to show by clear and convincing evidence that that factual finding is wrong. Yes. And that was never done. There was never any accusation raised by the petitioner that the delay was intentional, that the finding of the Chinese interpreter, that the state did that intentionally in order to delay this case. I didn't see any finding by the district court, although I guess finding is the wrong word, any ruling by the district court about any prejudice from that first 20 months. It looked like the magistrate judge and the district judge only talked about the last four months when they talked about prejudice. Is that right? Yes, ma'am. And we found there was no prejudice because the case was actually going to be called for trial. But since Mr. Phillips decided the day of trial not to testify, and he was only appointed a lawyer eight days earlier, so his case could not be called for trial because his lawyer would not prepare it, they couldn't go forward at that time. So the prejudice did not occur because the case could have been called for trial if no interference was done to Mr. Phillips, causing him not to want to testify at that time. That delay was not caused by the state. Right, the state's argument is the delay was caused by, that it's Appley's own fault that there was delay because Appley allegedly was interfering with the witness, correct? Yes, ma'am. Could you address the ineffective assistance and hearsay issue? Well, my co-counsel will be- Oh, okay. And he will be more going into the actual interpretation. In rebuttal? Yes, ma'am. Going to confrontation laws and also- And powers. And also the hearsay argument. Mr. Evans, sorry to interrupt you, but I want to go back to this issue of the interference because that's sort of what both the magistrate judge and the district court hung their hats on, that there was no record evidence of interference presented to both courts, as I understand it. So did the state point the courts to where that record evidence was? Because I find it hard to believe that if you had pointed the court to that evidence that the court would not have focused on it. Well, I'm going to fall on the sword. We did not do that, and it's my mistake that that didn't happen. Well, then that sounds like you forfeited that argument. Well, I wouldn't say I forfeited- Did you tell the court that this evidence existed and just not cite it? No, we did not. But my opinion was not forfeited because that was always our argument, that they interfered with this evidence. And how could we fault the court below for not addressing something it was not aware of? Well, according to 2254, the determination of facts in light of the evidence presented in the state court proceeding. So our position is, under 2254, that is evidence in the state court proceeding, so that is evidence that the trial court must- And the standard under 2254, right, has to be unreasonable beyond what any fair-minded jurist could conclude. But it looked like the district court instead was assessing the sufficiency of the evidence before the South Carolina Supreme Court. Yes. Now, maybe it assessed that incorrectly because you didn't point out that the trial had a plethora of evidence. But it seemed to be asking the wrong question and kind of de novo reviewing what the South Carolina Supreme Court had done to see whether the South Carolina Supreme Court had sufficient evidence to make its conclusions, rather than asking the appropriate AEDPA question of whether this is beyond what any fair-minded jurist could conclude. I would agree, Your Honor. That's our position. Also, our position is that the evidence was there. And 2254 states that, in order to grant a habeas petition, there has to be an unreasonable determination by the courts under the records that exist. And under these records, there exists some evidence that state courts, state Supreme Courts, was informed of this delay being caused by the petition itself. And what's the standard for our review of the district court's work? I think the standard is that you make a determination whether or not the district court was correct in assessing- De novo, right? We de novo review whether this was an unreasonable determination by the South Carolina Supreme Court. Yes, ma'am. So we can look at all the evidence because we know it exists. I think that that's the authority of this court. If the district court made a mistake, the authority of this court is to correct those. And what's the best record evidence, in your view, that the state Supreme Court had about the delay being appellee's own doing? The trial testimony itself, Your Honor, from Ms. Alva Phillips and also investigator Young. That was evidence that was provided to South Carolina State Supreme Court. I mean, in his own order, the district courts referred to the Langford decision. And in that order, in Langford, which can be found in appendix page 2118, Supreme Court simply said, and this is from the order of the district court, from our review of the record, there was evidence that Langford and his co-defendant persuaded Phillips to remain silent. That's from the Langford decision that's in the order. Was investigator Young called by the state or only by the co-defendant? I think investigator Young was called by the co-defendant. The state didn't call investigator Young? The state didn't call investigator Young. Just benefited from that. And also in appendix 2118, Supreme Court stated that the loss of this crucial piece of evidence therefore effectively gutted the state's case and caused a delay of trial. And as I said before, once Mr. Phillips decided not to testify, that pretty much put the state in a conundrum, because he made the statement on the day the case was going to be called for trial. So the state had no other alternative but to ask the court for a continuance in order to possibly bring Mr. Phillips to trial. Or persuade him to change his mind and testify during the petition's trial, which he decided to do without any assurances of a sentence, Your Honor. And so our position is that the district court just made a mistake in this case. It made a ruling where there was evidence for the Supreme Court that this occurred. And we will ask this court to reverse the decision of the district court and remand it back to the district court. I'm almost out of time. Are there any further questions from this court? I don't have any. Thank you. Thank you very much, Mr. Evans. Mr. Gross, I'm sorry if I'm mispronouncing your name. Excuse me, Your Honor. It's Tom Gross. You had it correct. Good morning. May it please the court. I'm very honored to be here. I'm also honored to be here with Casey Langford, who is my client in this matter, who has been released pending the appeal in this case by the district court. Mr. Chief Judge, I want to go back to a point that you raised and the panel in the courtroom picked up on with regard to the forfeiture, particularly with the allegations that Mr. Langford was responsible for causing the delay. First of all, we disagree with his being the cause of it, but if you look at both the report from the magistrate, the United States magistrate, as well as the report from the district judge, they both commented on the fact that the state failed to point to any particular part of the record where it was alleged that there was support for the fact that Mr. Langford was responsible for the delay. The state had an opportunity to object to what the magistrate said in her report and recommendation. They did not include that in the objections, and the case law, I think, is clear from the United States Supreme Court that if a party fails to object to the report and recommendation, then they forfeited or they waived that argument. But I thought opposing counsel argued that the support for that is in the transcript of the trial itself and that testimony of the co-defendant and, I guess, of Mr. Young, or Investigator Young as well. What's your response to that? Well, I disagree with their characterization of it. For example, they're arguing that Mr. Langford put pressure on Alvin Phillips. If you look at Joint Appendix, page 760, let's see. Actually, it may be. Yes, the solicitor asked, did you sign them to please them? Were they pressuring you to sign those? And the response was no. That was the testimony. You're re-arguing the case, though. I mean, at 758, right, Alvin testifies, that's not my handwriting. They gave me this note to sign so that nobody would get in trouble to asking me to change my testimony. That's cited to the state Supreme Court. The state Supreme Court was informed about all of this by the state. Now, you're pointing out they didn't cite it to the magistrate and to the district court, right? And you're asking us to find it waived because it wasn't cited there. But it was at trial and it was cited to the state Supreme Court, and we're reviewing that for whether it was unreasonable. The first thing, Judge Rushing, is I think that what was cited to the state Supreme Court, what they argue here today, is different than what's in the record. The record is not that there was any pressure. Mr. Phillips expressly denied being pressured. The only evidence is that he was asked to sign a statement, two statements. He signed those statements. So are you saying that, is that your clear and convincing evidence? Is that your evidence that we can find by clear and convincing evidence that the state Supreme Court made an incorrect finding of fact that petitioner was involved in any way in the final four months of delay? I don't think that you can look at this record and say that Casey Langford was responsible for the final four months of the delay. I don't think you can do that. I think that the evidence that was before the state Supreme Court was that one person asked somebody else to do something and they did it. There was no pressure at all. Who did Mr. Phillips testify gave him the statements that he was asked to sign? He did testify that Mr. Langford did that. And they were exculpatory statements? They were exculpatory statements, yes. And though while, I mean, I want to go back to this issue of the forfeiture because the magistrate specifically stated that they Does the forfeiture rule mean if a party fails to object to the magistrate's ruling at all, then it's considered forfeited for appeal? No, I don't think it's But if they object to the magistrate's opinion, it goes to the district court and the district court reviews either for clear error on findings that aren't specifically objected to, or it reviews de novo, right? And then all of that comes to us. Well, I think that the law is that if they don't object to that particular finding, then they forfeited that for the appeal. But that's not how the district court treated it. Respectfully, I disagree with your perspective on appeal, but the district court reviewed all of that for clear error, right? And the district court reviewed what they asked them to review. They asked them to review the motions hearing, and they found that the statements by the solicitor were not substantiated. They didn't ask. There was a number of places. And when you say the statements by the solicitor, you mean that the statements that appellee caused the delay? Correct. They certainly objected to that part, right? The part about the delay. Well, they asked the district judge to look at what was at the motion hearing, the May motion hearing before the, I believe it was a September trial, and the district judge and the magistrate judge both looked at that and reached the same conclusion that Mr. Lankford. So they objected to that issue? Well, they reiterated, they argued that Mr. Lankford was part of the delay, but they did not point to what they're pointing to in their brief and what they're pointing to here today. They didn't point to it in the, you know, the objections to the magistrate. And so I think that that is where the forfeiture comes into play on that issue. I mean, they candidly admit. Well, because some of the things they point to are after the state Supreme Court decision. In fact, the argument below was almost exclusively about the testimony of the assistant solicitor during the PCR hearing, which was months, if not years, after the state Supreme Court decision. Can I ask you about the 20-month delay? Yes. What's your clear and convincing evidence rebutting the presumption that the state was at most negligent in that 20-month delay? Well, I know that Justice Hearn at the oral argument pointed out that there was a Chinese immersion school in Columbia, South Carolina. I don't think, I think the questions earlier was that, you know, the state really wasn't saying that they had a hard time finding a Chinese. Sorry, the standard is clear. What's your clear and convincing evidence to dispute that the state court made a finding, right, that the state was at most negligent in that 20 months? So you have to give clear and convincing evidence to disprove that. Okay. Well, the clear and convincing evidence is what the magistrate judge found and what the district judge found and what the South Carolina Supreme Court found in the portion of this opinion, which is that the reason for that 20-month delay was because the solicitors controlled the docket, and that violated the state constitution. Right. So the state Supreme Court thought about that, the solicitor control and the interpreter, and concluded the state was at most negligent, and that's what you have to overcome. Well, but they did not analyze, as the magistrate judge pointed out and the district judge agreed, they did not analyze the role that solicitor docket control played in that first 20-month delay. Did they not? Because it looked to me like the whole point of considering, I mean, the speedy trial argument at the state Supreme Court, it was a little odd, that was just a prejudice inquiry, right? They were, the whole argument was about solicitor docket control, at least according to their opinion, right? I know it was. No, no. It was Sponte, but they were focused on solicitor docket control and then asked, did this prejudice him by causing a speedy trial violation? And then they looked at speedy trial. So it was surprising to me that the magistrate would say the court was not thinking about solicitor docket control when it made that ruling. Well, you look at the four corners of their opinion and they did not address the role that solicitor docket control played in that. But you agree that the bulk of the opinion was about solicitor docket control? I agree. And they found it unconstitutional. I agree that that was a significant part of the opinion, but the issue that was presented to the South Carolina Supreme Court was whether or not Mr. Langford's right to a speedy trial was violated. The Supreme Court, between this case and Brian Phillips' case, had almost 100 minutes of oral argument that morning where solicitor docket control was part of it. But that was brought in through the amicus brief. But the main issue, Langford's main issue, in the South Carolina Supreme Court was the violation of the speedy trial. In fact, that was the only issue that he appealed to the South Carolina Supreme Court. And while solicitor docket control became a monumental part of that case, it was not addressed in the part of the opinion that talked about that 20-month delay. And so that would be our position there. Can you address the hearsay and ineffective assistance part of the case? I can. And I think that you asked Mr. Evans, Judge Thacker, about who called Investigator Young. Brian Phillips' lawyer called Investigator Young. And I think that you have to look at all of Investigator Young's testimony, both the directó This is just a challenge toójust a confrontation-slash-hearsay challenge, right? Not to all of his testimony, just a failure to make an objection on hearsay grounds? A failure to make an objection on hearsay and confrontation clause, both of those grounds. That is the challenge. So when Brian Phillips called Investigator Young, they asked about talking to this informant, Stevens, and receiving information, which included the three names. And then whenó Do you thinkódid Phillips offer that testimony implicating himself for the truth of the matter, for the truth that he did commit the crime? I think that that was the effect of the testimony. But if you look at the cross-examination that Mr. May made, he asked about, you know, did Mr. Phillips give youóI mean, did Mr. Stevens give you these three names, Alvin Phillips, Brian Phillips, Casey Langford? Did he tell you that they committed these crimes? Sorry, is this the cross or the direct? It's the cross-examination. So this is not the part that you say he should have objected to? He should have objected toóhe should have objected to all of it. He should have objected to it when it was first asked what information did this Mr. Stevens, who didn't testifyó Did somebody else that's not in the courtroom tell you, let's hear what somebody who's not here to testify today has to say? That's when he should have objected. And that would have shut down everything. That would have shut down naming those names. It would have shut down the solicitor's cross-examination. It would have shut down the solicitor using that evidence and emphasizing that evidence in his argument to the jury, basically sayingó The solicitor was arguing it was true. He said that Mr. Stevens gave the exact same information that Alvin Phillips gaveó But you're notóyou didn't raise that he didn't object in the closing, right? I just want to keep us focused onó Well, that gets to the question. This is a question about whether he objected to his co-defendant presenting this evidence about the investigation, right? How they got the names. And he should have objected. That would have shut down that question, the cross-examination, and the closing. And then he should have objected when he was first called. He should haveóit's your argument. He should have objected when the cross-examination occurred to establish the truth of the matter asserted. And then he should have objected during closing. Correct. And that initial objection, though, would have shut down everything. Well, could have. We don't know. What's the double layer of hearsay here? The magister and the district court called this double hearsay? I think that they're referring to the fact that it was a statement that Alvin Phillips supposedly made to Mr. Stevens, who then was repeated toó Did Mr.óI didn't see that in theóI just saw that Mr. Stevens told the officer. Well, where Mr. Stevens supposedly got the information from wasóI believe it was from Alvinó I didn't see that in the testimony. It looked like maybe just one layer of hearsay. But if that's what it is, I guess the question, though, is why do we believe this was offered for the truth when a co-defendant introduced it to explain the investigation? Well, it was not a valid trial strategy. That lawyer has beenó Yeah, that lawyeróanother court's already found that he was ineffective foró Andó Not for failing to object on hearsay grounds, interestingly, but for introducing this testimony and other various problems. If it wasn't a valid strategy for him to introduce that testimony, why was it a valid strategy for Mr. Langford's lawyer not to object to that testimony? Well, then we also have to go throughóI didn't see the district court do this, but, you know, there's a prejudice inquiry to Strickland. Yeah. So not only could he have objected, but would the objection have been sustained, and if the evidence was kept out, would the outcomeódo we have a reasonó is there a reasonable probability that the outcome of the trial would have been different? Don't we have to go through all those steps? What's your argument for those steps? Well, and you shut me down a minute ago, but part of the argument for the prejudice was how it was used in the closing argument. Judge Keasley's a very good judge. I think that Judge Keasley would have got it. He would have sustained that objection, and then you would have had, you know, just the testimony of Mr. Phillips, who was impeached by the prior inconsistent statements that he gave. He wouldn't have had the abilityóI mean, this was not a case of overwhelming evidence. They didn't have anything other than the co-defendant's testimony for which he was going to be rewarded through. They had nothing else. There was no eyewitness identification. There was no DNA. There was no other corroborating evidence except for this evidence from Mr. Stevens. So I think the outcome of the trial would be different, so I believe we haveó And then I guess the final layer is it would have been unreasonable for any jurist to conclude otherwise. Ió Yeah, the final step. I think so, yes. Yes, and certainly, you know, I mean, the district court didn't rely on Judge Maddox's opinion or order in the co-defendant's case. The magistrate did. Judge Coggins didn't discuss that, but, you know, you also haveóI mean, that's some evidence that, you know, in addition to our argument, that it was prejudicial and warranted a new trial. Do you have anything else, Mr. Bruce? I would just add, again, this is a situation where, you know, the part of theó A big part of the decision was based on the Confrontation Clause, and the state never really argued the Confrontation Clause in its objections or to Judge Coggins below. Unless there's any other questions, I'll yield the balance of my time. Thank you. Thank you very much. Mr. Larrabee. Good morning, Your Honor, and may it please the Court. My name is Brandon Larrabee. I'm an assistant attorney general, also representing the warden in this case. The Confrontation Clause is intended to keepómay it please the Courtó The Confrontation Clause is intended to keep testimonial hearsay out of the courtroom. If a statement outside of court is not offered for the truth of the matter asserted, it is not barred by the Confrontation Clause. And we know this because the Supreme Court has said that repeatedly, most recently in Smith v. Arizona, and that's 602 U.S. 779. And the Court in that opinion said, when a statement is admitted for a reason unrelated to its truth, we have held the clause's role in protecting the right of cross-examination is not implicated. That's at 785. At 793, it quotes Crawford. It says, and that means the clause, quote, does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. So one thing I think it's important to realize is that when the respondent argued below that the statement in this case was not hearsay, that was an argument on the Confrontation Clause. To find otherwise would be akin to saying, for example, that the state did not argue negligence below because it didn't argue causation in a civil case, for example. The issues are one and the same. Investigator Young's testimony was not hearsay for some of the reasons we've already heard this morning. It was not offered to prove the truth of the matter asserted. In this case, the co-defendant was trying to offer that testimony in order to cast doubt on the origins of the investigation into the three defendants here. But the cross-examination was for the truth of the matter asserted, I assume, or you wouldn't have also argued it in closing argument. So does it not matter because it was cross-examination and not a question elicited on direct? Well, I think by that point the evidence had already come in. If you look at Joint Appendix 853, lines 13 through 20, that is an example where in the defense's initial examination he talked about the three names, Investigator Young talked about the three names that were submitted to the court. So I think if anything, you could say that there's no prejudice there because it would have already been in evidence. That objection would have been overruled, right, because the evidence was already in. Exactly. It's essentially sort of a door opening. Or you could say, I mean, you just said the harm had already been done, so or you could say, or now the prejudice had already been committed, now it's doubly prejudicial when it's asked on cross-examination, and then triply so when it's brought up in closing argument. And that's another way you could argue it. Not you, of course, but somebody. Except that that doesn't really get to the hearsay because the hearsay is what it was offered for. And the purpose it was offered for initially was to cast doubt on the origins of the investigation. That would have happened regardless of whether the state brought it up. Was it was a jury told what what the purpose of that evidence was being introduced for? I don't know if I can cite you a record reference on that, Your Honor. So I'd have to look back at it. I think if it wasn't. And in fact, the evidence was then used on cross-examination in the way that Judge Thacker described it. Why isn't that an effective assistance of counsel at a minimum? If, in fact, your point is that this wasn't hearsay, incumbent upon a competent defense lawyer to emphasize that point in an instruction. I understand what you're saying, I guess. Again, the issue would be here that there was the initial reason for the testimony had already established that three names were given in that case. And so if anything else, it didn't add to the record. It didn't add anything to the record that wasn't already there. I don't know that the court has a history in South Carolina or habit in South Carolina of instructing the jury on rules of evidence and what things are or aren't offered for, except in certain cases. Obviously, there are instances like the petitioner's record, if that's argued on his examination, things like that. But I don't know that they make a habit of spelling out, explaining hearsay to the jury. Let me ask this. You mentioned that by the time cross-examination began, the evidence had been entered and offered, as you say, not for the truth of the matter asserted. But didn't a state court already determine that that lawyer was ineffective in part for doing that? If you're referring to Judge Maddox's opinion, Judge Maddox is not actually looking at this as a confrontation clause issue. And the issue he's looking at isn't even whether or not that testimony was objected to. His issue, and you can see this in the heading on Joint Appendix 102, is calling Young as a witness. And his argument is that the state might not have been able to get this in because it would have been hearsay if it had been offered by the state for the truth of the matter asserted. The fact that the co-defendant's lawyer, Brian Phillips' lawyer, called the witness and allowed him to testify, brought his testimony forward, was what Judge Maddox found was ineffective assistance on that ground. I think that the hearsay issue, I don't think it's essential to Judge Maddox's ruling because I think his argument is it wouldn't have come in if the state had offered it. But it was able to come in because it was being offered for something other than the truth of the matter asserted. That's how I would read Judge Maddox's ruling in that case. And even so, as far as the difference between Judge Maddox and the judge in this case, we point out that habeas is aimed at making sure the decisions are within a range of reasonableness. Just because two judges come to different conclusions, that does not mean that either of them is necessarily unreasonable as that's meant under the federal habeas laws. I see that I'm running out of time, so if I have no other questions, then we would ask the court to reverse the order of the district court. All right, thank you very much, Mr. Larrabee. I appreciate your argument. Thank counsel for their fine arguments this morning. Mr. Gross, I can't see you, but I want to thank you for taking on the representation of your client in this case, which you've done pro bono. And we're grateful to you for doing that. We could not do our work without lawyers who were committed to doing work. And some were not getting paid for doing court-appointed work and pro bono work. So thank you on behalf of the court. We'll take a five-minute recess. And my colleagues, if you need more time than that, just have the clerk alert me and we'll take more time. But we'll take a five-minute recess before moving on to our last two cases. And we'll come down and greet counsel before. Yes, yes, thank you. This honorable court will take a brief recess.
judges: Albert Diaz, Stephanie D. Thacker, Allison J. Rushing